PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DAVID APPLEBY,

      *Petitioner-Appellant,*

      v.

WARDEN, NORTHERN REGIONAL
JAIL AND CORRECTIONAL FACILITY,

      *Respondent-Appellee.*

No. 07-7613

Appeal from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
John Preston Bailey, District Judge.
(3:05-cv-00087-JPB-JSK)

Argued: October 27, 2009

Decided: February 19, 2010

Before TRAXLER, Chief Judge, and NIEMEYER and
AGEE, Circuit Judges.

---

Affirmed by published opinion. Judge Agee wrote the majority opinion, in which Judge Niemeyer joined. Chief Judge Traxler wrote a dissenting opinion.

---

## COUNSEL

**ARGUED**: Martin Patrick Sheehan, SHEEHAN & NUGENT, PLLC, Wheeling, West Virginia, for Appellant.

2     Appleby v. Warden, Northern Regional Jail

Robert David Goldberg, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Appellee. **ON BRIEF**: Darrell V. McGraw, Jr., Attorney General, Charleston, West Virginia, for Appellee.

---

## OPINION

AGEE, Circuit Judge:

David Appleby ("Appleby") appeals the judgment of the United States District Court for the Northern District of West Virginia, which dismissed his petition for a Writ of Habeas Corpus (hereinafter "habeas petition") pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 2253(c), this Court granted a certificate of appealability on one issue. For the following reasons, we affirm the judgment of the district court.

### I.   Background

Appleby was indicted in September 2001 in the Circuit Court of Ohio County, West Virginia ("circuit court") for Driving Under the Influence of Alcohol, Third Offense ("Count I"), in violation of West Virginia Code §§ 17C-5-2(d)(1)(A) and 17C-5-2(k), and Driving While Revoked for Driving Under the Influence, Third Offense ("Count II"), in violation of West Virginia Code § 17B-4-3(b).

Appleby entered a plea of guilty to both charges. During the plea colloquy, the circuit court informed Appleby that, as a consequence of his guilty plea, he could be imprisoned for "a term of not less than one year nor more than three years" each for Count I and for Count II. The court advised Appleby that the one to three year sentences for each count could "run consecutively so that your sentence then would be not less then [sic] two nor more than six years." J.A. 285-86. The court then accepted Appleby's guilty plea as being entered

"knowingly, intelligently and voluntarily," J.A. 291, and set sentencing to take place approximately a week later.

The Ohio County prosecuting attorney then filed a Recidivist Information, which alleged that Appleby was "the same person who has been five times previously convicted in the State of West Virginia for crimes punishable by confinement in a penitentiary, [and] should be sentenced to be confined in the state correctional facility for life" pursuant to the West Virginia recidivist statutes, West Virginia Code §§ 61-11-18 and 61-11-19 (the "West Virginia recidivist statutes").[1] J.A. 192. The predicate offenses alleged in the Recidivist Information included a felony conviction of unlawful assault, in violation of West Virginia Code § 61-2-9(a); two felony convictions of Driving While Revoked for Driving Under the Influence, Third Offense, in violation of West Virginia Code § 17B-4-3(b); and two felony convictions of Driving Under the Influence, Third Offense, in violation of West Virginia Code § 17C-5-2(k).

Before proceedings on the Recidivist Information began, Appleby filed numerous motions with the circuit court, including a motion to dismiss contending that the "offenses alleged in the information do not form a basis for the State's request for a sentence of life." J.A. 300. This motion was denied, but after obtaining new counsel, Appleby filed a second motion to dismiss, alleging multiple constitutional issues. The circuit court held a hearing on the second motion to dismiss which it also denied.

Appleby then petitioned the Supreme Court of Appeals of

---

[1]West Virginia's recidivist statute directs that when "any person [is] convicted of an offense punishable by confinement in the penitentiary," § 61-11-19, and that "person [has] been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life." § 61-11-18(c).

West Virginia ("WVSCA") for a Writ of Prohibition to prevent the recidivist proceedings from continuing or, in the alternative, to allow him to withdraw his guilty plea. Appleby raised multiple constitutional and procedural issues in the petition, including: "[S]hould Mr. Appleby have been given notice of the State's intention to have him sentenced as a recidivist before his plea was accepted?" J.A. 386. The WVSCA heard the petition on the merits, and ultimately denied relief on all issues. The WVSCA held, in relevant part, that because "the imposition of a life sentence is not 'definite, immediate and largely automatic,'" the recidivist proceedings are a collateral consequence of a guilty plea and thus the "sentencing court need not advise a defendant about the habitual offender law before accepting a guilty plea to a predicate offense under that law." *Appleby v. Recht*, 583 S.E.2d 800, 808-09 (W. Va. 2002) (quoting *Cuthrell v. Director, Patuxent Inst.*, 475 F.2d 1364, 1365-66 (4th Cir. 1973), and *State v. Elliott*, 574 A.2d 1378, 1380 (N.H. 1990)).

Proceedings on the Recidivist Information were then conducted in the circuit court. A jury verdict was returned finding Appleby to be the same person who committed the predicate crimes alleged. A sentencing hearing was held and a life sentence, with eligibility of parole after 15 years, was imposed in October 2003. Appleby appealed the decision to the WVSCA, but the petition for appeal was denied.[2]

Appleby then timely filed the habeas petition with the district court, contending that his guilty plea was "not voluntary because he did not have a full understanding of the consequences of his guilty plea, in particular, Petitioner was not told at his plea hearing that he faced the possibility of a life sentence under the West Virginia recidivist statute." J.A. 942. The Warden filed a motion to dismiss, which the magistrate judge recommended be granted principally because the WVSCA had found that a recidivist life sentence is a "collat-

---

[2]Appleby did not file a state habeas petition.

eral consequence of a plea, rather than a direct consequence" citing the decision in *Recht*. J.A. 948.

The district court adopted the magistrate judge's Report and Recommendation, and found, in relevant part, that "petitioner's plea was done knowingly and voluntarily" because "a valid guilty plea requires only that the defendant be advised as to the 'direct' consequences of his plea," and "a recidivist life sentence is a 'collateral' consequence of a plea." J.A. 966. The district court held the WVSCA "determination was not contrary to, or an unreasonable application of, clearly established federal law" and granted a motion to dismiss Appleby's habeas petition with prejudice. J.A. 966-67.

Appleby timely appealed the district court's order denying his habeas petition. This Court granted a certificate of appealability as to this issue: "Whether Appleby's guilty plea was knowing and voluntary, in light of the question whether his sentence of life imprisonment was a direct or collateral consequence of his guilty plea." J.A. 973. Our review is therefore limited only to the foregoing issue.[3]

## II.   Standard of Review

The decision of a district court on a matter of habeas corpus relief is reviewed *de novo* and under the standards set forth in 28 U.S.C. § 2254. *Bell v. Ozmint*, 332 F.3d 229, 233 (4th Cir. 2003). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), if the issue on appeal was adjudicated in state court, as it was here, this Court

> may award habeas corpus relief on a claim that was adjudicated on its merits in state court only if the

---

[3]On brief, Appleby argues three additional issues. However, because "this court is empowered to consider only the 'specific issue or issues' set forth in the certificate of appealability," we will not consider those issues. *See United States v. Linder*, 561 F.3d 339, 344 n.6 (4th Cir. 2009).

adjudication "resulted in a decision that was contrary
to, or involved an unreasonable application of,
clearly established Federal law, as determined by the
Supreme Court of the United States" or "resulted in
a decision that was based on an unreasonable deter-
mination of the facts in light of the evidence pre-
sented in the State court proceeding."

*Cummings v. Polk*, 475 F.3d 230, 237 (4th Cir. 2007) (quoting
28 U.S.C. § 2254(d)).

In *Bell v. Cone*, the Supreme Court held that a state court's
decision is "contrary to" clearly established federal law "if the
state court applies a rule different from the governing law set
forth in our cases, or if it decides a case differently than we
have done on a set of materially indistinguishable facts." 535
U.S. 685, 694 (2002). A state court's decision is an "unrea-
sonable application" of federal law "if the state court correctly
identifies the governing legal principle from our decisions but
unreasonably applies it to the facts of the particular case." *Id.*
However, "it is not the province of a federal habeas court to
reexamine state-court determinations on state-law questions."
*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

### III.    Collateral Consequence

#### A.

Appleby argues that his due process rights were violated
because the circuit court failed "to make certain that [he] had
a full understanding of the consequences of his guilty plea."
Appellant's Br. 12. Specifically, Appleby contends that he
"was never told that by pleading guilty that he might be sub-
ject to a sentence in excess of the indeterminate consecutive
sentence of two to six years imprisonment." Appellant's Br.
13. In sum, Appleby claims that "[t]he decision of the
[WVSCA] that Mr. Appleby had no right to have the likeli-
hood he would have to face a life sentence as a recidivist

explained to him as part of a plea of guilty is not reasonable." Appellant's Br. 21.

The WVSCA held that the West Virginia analogue to Federal Rule of Criminal Procedure 11 "does not require a trial court to advise a defendant concerning a possible recidivist enhancement."[4] *Recht*, 583 S.E.2d at 808. The WVSCA found "further support in the recognition of the Fourth Circuit that . . . 'the defendant need not be advised of all collateral consequences of his plea,'" which are those that do not result in "a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Id.* (quoting *Cuthrell*, 475 F.2d at 1365-66). Because "[t]he State not only retains the discretion to decide when to pursue recidivist sentencing (or to decide not to so proceed), but the separate nature of the recidivist proceeding[s] [also] requires the State to satisfy a

---

[4]Although both parties agree that the circuit court did not discuss the possibility of future recidivist proceedings with Appleby, the WVSCA

> note[d] that the State says that it specifically informed Mr. Appleby's trial counsel that, if he was convicted, the State would seek a recidivist sentence, and that discovery was apparently provided to Mr. Appleby that included a list of Mr. Appleby's prior convictions. We additionally note that at a bond hearing . . . the Prosecuting Attorney told the trial judge, in the presence of Mr. Appleby and counsel, "I do not believe that two to six is the maximum sentence he may be facing. And in fact, this Court has often indicated that DUI three is an act of violence, and I contend that there's a possibility of a much steeper sentence . . . ."

*Recht*, 583 S.E.2d at 809 n. 6. Appleby was at this hearing and presumably heard this exchange.

This Court has held that, even if neither the court nor defendant's counsel "ascertained that [the defendant] understood the consequences of his plea," if the defendant "in fact understood, the error was harmless," although the state has the burden of proving harmlessness. *Bailey v. MacDougall*, 392 F.2d 155, 160 (4th Cir. 1968). The Second and Eighth Circuits have held that it is sufficient that the defendant actually know of the consequences of his plea, even if the court did not inform him. *See United States ex rel. Brooks v. McMann*, 408 F.2d 823, 825-26 (2d Cir. 1969); *Kotz v. United States*, 353 F.2d 312, 314-15 (8th Cir. 1965).

number of requirements," the WVSCA held that a recidivist proceeding is a collateral, and not direct, consequence of a guilty plea. *Id.* The WVSCA concluded that Appleby thus had full understanding of the direct consequences of his plea, and therefore his due process rights were not violated. The issue before us is whether the WVSCA's determination is contrary to or an unreasonable application of applicable federal law, as determined by the United States Supreme Court.

### B.

In *Recht*, the WVSCA stated that

> "[g]uilty pleas are governed by Rule 11 of the West Virginia Rules of Criminal Procedure, which is patterned after Rule 11 of the Federal Rules of Criminal Procedure." *State v. Bennett*, 370 S.E.2d 120, 123 (W. Va. 1988). In applying our Rule 11, we have looked to the advisory committee's note to federal Rule 11.

*Recht*, 583 S.E.2d at 807-08. The 1966 Amendments to the Rule set out the requirement that, before accepting a guilty plea, a judge must "determine that the defendant understands" the consequences and provides a list of these consequences which includes, among other things, "any maximum possible penalty" and "any mandatory minimum penalty." FRCP 11(b)(1)(H) & (b)(1)(I). The notes to the 1974 amendments of the Rule explain that

> the judge is *not required to inform a defendant about [additional consequences that might follow a guilty plea, including additional punishment]*, though a judge is free to do so if he feels a consequence of a plea of guilty in a particular case is likely to be of real significance to the defendant.

*Id.* (emphasis added).

These amendments brought the Rule in line with the preexisting and longstanding principle that, before accepting a guilty plea, a trial judge must ensure that the defendant is fully aware of the relevant consequences of the plea. *See, e.g.*, *Kercheval v. United States*, 274 U.S. 220, 223-24 (1927). However, exactly which consequences are relevant beyond the list articulated by the Rule remained undefined. Thus, it was "clear that administration of [Rule 11] require[d] the development of some limiting guide to define the nature of the consequences of which a defendant must be advised so that the requirements of the rule shall have been met." *Fruchtman v. Kenton*, 531 F.2d 946, 948 (9th Cir. 1976).

The Supreme Court has emphasized that, because a defendant who enters a guilty plea forgoes "not only a fair trial, but also other accompanying constitutional guarantees[,] . . . the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" *United States v. Ruiz*, 536 U.S. 622, 628-29 (2002) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). A defendant enters a guilty plea intelligently when he is "advised by competent counsel, . . . made aware of the nature of the charge against him, and there was nothing to indicate that he was incompetent or otherwise not in control of his mental faculties." *Brady*, 397 U.S. at 756. A guilty plea is voluntary if "'entered by one fully aware of the *direct* consequences'" of the plea. *Id.* at 755 (emphasis added) (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), rev'd on confession of error on other grounds, 356 U.S. 26 (1958)).

The Supreme Court has neither further defined the term "direct," nor has it addressed whether recidivist proceedings are a "direct" consequence of the plea within the meaning of *Brady*.[5] Therefore, we must decide whether the WVSCA's

---

[5]Although the Supreme Court has not answered the question directly, "[f]or the 'clearly established' prong to apply, the relevant Supreme Court

determination that the West Virginia recidivist proceedings are not a direct consequence of the plea is contrary to or an unreasonable application of *Brady*. An examination of the nature of the West Virginia recidivist statutes and proceedings, Supreme Court commentary on recidivist statutes generally, and the federal circuit court of appeals' interpretation of *Brady* lead us to the conclusion that it was not.

1.

In *Recht*, the WVSCA examined recidivist proceedings brought pursuant to the West Virginia recidivist statutes, and concluded those proceedings are of a "separate nature," and thus a collateral consequence of the plea.[6] After citing our decision in *Cuthrell* that "the distinction between 'direct' and 'collateral' consequences of a plea . . . turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment," the *Recht* Court addressed the state law basis of Appleby's claim.

> Under West Virginia Code §§ 61-11-18 & 19, the imposition of a life sentence is not "definite, immediate and largely automatic." The State not only retains the discretion to decide when to pursue recidivist sentencing (or to decide not to so proceed), but the separate nature of the recidivist proceeding

precedent need not be directly on point, but must provide a 'governing legal principle' and articulate specific considerations for the lower courts to follow when applying the precedent." *Quinn v. Haynes*, 234 F.3d 837, 844 (2000). The Court has done so in *Brady*.

    [6]Although the WVSCA cited Rule 11 and circuit court of appeals precedent, it did not cite *Brady*. However, "to avoid [the] pitfall of rendering decision 'contrary to' federal law, [the] state court need not cite or even be aware of relevant Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Barbe v. McBride*, 521 F.3d 443, 456 n. 19 (4th Cir. 2008) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

requires the State to satisfy a number of require-
ments, such as: (1) filing a written information; (2)
proving "beyond a reasonable doubt that each peni-
tentiary offense, including the principal penitentiary
offense, was committed subsequent to each preced-
ing conviction and sentence"; and (3) proving
beyond a reasonable doubt to the jury the identity of
the defendant.

*Recht*, 583 S.E.2d at 808 (internal citations omitted).

Moreover, West Virginia Code § 61-11-19 requires the
Recidivist Information be brought before the defendant is sen-
tenced and within the same term of court "at which such per-
son was convicted" or jurisdiction to impose the recidivist
sentence is lost. To the extent the issue before us involves
questions of West Virginia law, the determination of the
WVSCA is binding as to matters of interpretation of state law.
*Estelle*, 502 U.S. at 67-68.

We agree with the WVSCA's determination that recidivist
proceedings are of a "separate nature" for several reasons.
First, even if a defendant has committed the requisite predi-
cate crimes, it is not a certainty that the recidivist information
will be filed. The decision to file the recidivist information is
soundly left to the prosecuting attorney's discretion. W. Va.
Code § 61-11-19; *see also Rummel v. Estelle*, 445 U.S. 263,
281 (1980) ("It is a matter of common knowledge that prose-
cutors often exercise their discretion in invoking recidivist
statutes . . . ."). Because the recidivist information is filed
after the court accepts the defendant's guilty plea, and
because the prosecuting attorney has the discretion to decide
whether to file it, the trial court cannot necessarily be
expected to have knowledge of the possibility. *See United
States v. Cariola*, 323 F.2d 180, 186 (3d Cir. 1963)
("[U]nsolicited advice concerning the collateral consequences
of a plea which necessitates judicial clairvoyance of a super-
human kind can be neither expected nor required.").

Second, if the prosecuting attorney decides to file the recidivist information, it must be timely and a separate proceeding must be held and several additional elements must be proven. The fact that each predicate offense was actually committed and that the defendant is the person who committed these crimes must be proven beyond a reasonable doubt. W. Va. Code § 61-11-19. If a jury is impaneled for the recidivist proceedings, that jury is completely distinct from that of the original proceeding. *See George v. Black*, 732 F.2d 108, 110-11 (8th Cir. 1984) (holding that a mandatory mental health commitment proceeding is not a direct consequence of the plea because the "proceedings are completely distinct from the original criminal proceedings and are conducted by a different tribunal"). Thus, the nature of recidivist proceedings pursuant to the West Virginia recidivist statutes verifies that those proceedings are not a "direct" consequence of the plea because they are not "definite, immediate and largely automatic."[7]

### 2.

The view that West Virginia recidivist proceedings are of a separate, indirect nature is bolstered by the Supreme Court's holdings and comments in decisions dealing with recidivist statutes. The Court has, in multiple cases, noted the "distinct nature" of recidivism proceedings. In *Graham v. West Virginia*, the Supreme Court noted the "distinct nature of the issue [of recidivism]" and the fact that "it does not relate to the commission of the offense . . . and therefore it may be subsequently decided." 224 U.S. 616, 629 (1912); *see also Almendarez-Torres v. United States*, 523 U.S. 224, 244 (1998). The Court has consistently held that recidivism is not

---

[7]With due respect for the view expressed in the dissent, we note that the dissent does not, and cannot, rebut the significant distinction of the West Virginia recidivist proceedings as separate, independent, and discretionary proceedings from the underlying criminal conviction. Consequently, the recidivist proceedings are not, as a matter of law, a "definite, immediate, and largely automatic" consequence of the guilty plea.

an element of the triggering crime, thus further emphasizing the discrete nature of the two proceedings. *E.g.*, *Almendarez-Torres*, 523 U.S. at 244 ("[T]o hold that the Constitution requires that recidivism be deemed an 'element' of petitioner's offense would mark an abrupt departure from a long-standing tradition . . . .").

In *Oyler v. Boles*, a decision also dealing with a challenge to the West Virginia recidivist statutes, the Supreme Court held that a defendant need not receive notice of impending recidivist proceedings during the trial on the underlying triggering offense. Although it does not deal with precisely the same issue at bar, *Oyler* is instructive. The Court held that "the determination of whether one is an habitual criminal is 'essentially independent' of the determination of guilt on the underlying substantive offense." *Oyler*, 368 U.S. 448, 452 (1962). Although a defendant must receive "reasonable notice" of impending recidivism proceedings, the *Oyler* Court emphasized that "due process does not require advance notice that the trial on the substantive offense will be followed by an habitual criminal proceeding." *Id.*; *see also Almendarez-Torres*, 523 U.S. at 243. It is clear from the *Oyler* decision and others that the Supreme Court has repeatedly emphasized the separate nature of recidivist proceedings, lending support to the WVSCA's determination that the proceedings are not a direct consequence of a guilty plea within the meaning of *Brady*.

The *Recht* Court appropriately referenced an opinion of retired Justice Souter when sitting as a New Hampshire Supreme Court justice:

> The possible significance of a guilty verdict for purposes of the habitual offender act is a classic example of a conviction's consequences that is collateral in the sense that the consequence requires application of a legal provision extraneous to the definition of the criminal offense and the provisions for sen-

> tencing those convicted under it. Thus, we have con-
> sistently held that a sentencing court need not advise
> a defendant about the habitual offender law before
> accepting a guilty plea to a predicate offense under
> that law.

*Recht*, 583 S.E.2d at 808-09 (quoting *Elliott*, 574 A.2d at 1380).

### 3.

We find further support for the WVSCA's decision in an examination of circuit courts of appeals' almost universally identical interpretation of *Brady. See Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) ("[T]o a very limited extent, reference to lower court holdings may be evidence of a rule mandated implicitly by the Supreme Court."); *Hawkins v. Alabama*, 318 F.3d 1302, 1309 (11th Cir. 2003). The Fourth Circuit and many of its sister circuits have defined the term "direct" used by the *Brady* Court by focusing on a dichotomy between "direct" and "collateral" consequences of a plea. *See Cuthrell*, 475 F.2d at 1366; *see also Wilson v. McGinnis*, 413 F.3d 196, 199 (2d Cir. 2005); *Steele v. Murphy*, 365 F.3d 14, 17 (1st Cir. 2004); *United States v. Littlejohn*, 224 F.3d 960, 965 (9th Cir. 2000); *King v. Dutton*, 17 F.3d 151, 152 (6th Cir. 1994); *United States v. Salmon*, 944 F.2d 1106, 1130 (3d Cir. 1991); *George v. Black*, 732 F.2d 108, 110 (8th Cir. 1984); *United States v. Sambro*, 454 F.2d 918, 922 (D.C. Cir. 1971) (en banc) ("We presume that the Supreme Court meant what it said when it used the word '*direct*'; by doing so, it excluded *collateral* consequences.").

In defining the two terms, this Court in *Cuthrell* held that "[t]he distinction between 'direct' and 'collateral' consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Cuthrell*, 475 F.2d at 1366; *see also*

*United States v. Bouthot*, 878 F.2d 1506, 1511 (1st Cir. 1989). The Ninth Circuit noted that "where the consequence is contingent upon action taken by an individual or individuals other than the sentencing court . . . the consequence is generally 'collateral.'" *Littlejohn*, 224 F.3d at 965. Courts have held that collateral consequences of a plea include deportation, *United States v. Russell*, 686 F.2d 35, 39 (D.C. Cir. 1982); the potential loss of federal benefits, *United States v. Morse*, 36 F.3d 1070, 1072 (11th Cir. 1994); the use of a conviction as an aggravating circumstance in sentence for an unrelated charge, *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994); the possibility of consecutive sentences, *Wall v. United States*, 500 F.2d 38, 39 (10th Cir. 1974) (per curiam); a subsequent mandatory mental health commitment proceeding, *George*, 732 F.2d at 110; and the possibility of commitment for life as a sexually dangerous person, *Steele*, 365 F.3d at 17. Furthermore, several circuit courts of appeals have explicitly held that possible subsequent classification of the defendant as a recidivist if he committed a future felony is a collateral, and thus not a direct, consequence of a plea. *See, e.g.*, *United States v. Salerno*, 66 F.3d 544, 551 (2d Cir. 1995); *Salmon*, 944 F.2d at 1130. *But see Berry v. United States*, 412 F.2d 189, 191-92 (3d Cir. 1969) (holding that the fact that the defendant was ineligible for parole because of his status as a recidivist was a consequence of which he must have been informed during the plea colloquy).

Although these circuit court decisions do not ultimately determine whether the WVSCA misapplied Supreme Court precedent, "these prior decisions can and indeed must guide us in determining what constitutes an unreasonable application, under § 2254(d), of the rule that a guilty plea must be knowing, intelligent and voluntary in order to be valid." *Wilson*, 413 F.3d at 199-200.

## IV.

For the foregoing reasons, we conclude that the WVSCA's holding that recidivist proceedings were not a direct conse-

quence of Appleby's guilty plea, and thus his plea was know-
ing and voluntary, was not contrary to or an unreasonable
application of established federal law as determined by the
Supreme Court. Accordingly, the judgment of the district
court is

*AFFIRMED.*

TRAXLER, Chief Judge, dissenting:

David Appleby pleaded guilty to two drunk-driving related
charges after being informed by the judge that the most he
could get would be six years. At sentencing the judge gave
him life imprisonment. Clearly established federal law
requires defendants to be informed of the direct consequences
of their decision to plead guilty, and the sentence for the
crime to which a defendant is pleading guilty is a direct con-
sequence of that guilty plea. I therefore believe that the deci-
sion of West Virginia's Supreme Court of Appeals was
contrary to clearly established federal law as determined by
the United States Supreme Court and that the district court's
denial of Appleby's habeas petition should be reversed.
Accordingly, I respectfully dissent.

I.

A criminal defendant who pleads guilty waives many con-
stitutional rights, "including his privilege against compulsory
self-incrimination, his right to trial by jury, and his right to
confront his accusers. For this waiver to be valid under the
Due Process Clause, it must be an intentional relinquishment
or abandonment of a known right or privilege." *McCarthy v.
United States*, 394 U.S. 459, 466 (1969) (footnote and internal
quotation marks omitted). We may not presume a waiver to
be knowing and voluntary; the record must affirmatively dem-
onstrate that the defendant had "a full understanding of what
the plea connotes and of its consequence." *Boykin v. Ala-
bama*, 395 U.S. 238, 244 (1969).

The consequences of which the defendant must be aware before pleading guilty are the "direct consequences" of the plea. *Brady v. United States*, 397 U.S. 742, 755 (1970) (internal quotation marks omitted). Courts of appeal have generally understood *Boykin* and *Brady* to mean that a defendant pleading guilty must be aware of the direct consequences of the plea but need not be informed of the indirect or collateral consequences of a guilty plea. *See United States v. Sambro*, 454 F.2d 918, 922 (D.C. Cir. 1971) (per curiam) ("We presume that the Supreme Court meant what it said when it used the word '*direct*'; by doing so, it excluded *collateral* consequences."); *see also Virsnieks v. Smith*, 521 F.3d 707, 715 (7th Cir. 2008) ("[A]lthough a defendant must be informed of the direct consequences flowing from a [guilty] plea, he need not be informed of collateral consequences."); *Meyer v. Branker*, 506 F.3d 358, 367-68 (4th Cir. 2007) ("For a guilty plea to be constitutionally valid, a defendant must be made aware of all the 'direct,' but not the 'collateral,' consequences of his plea."), *cert. denied*, 128 S. Ct. 2975 (2008).

The Supreme Court has yet to catalogue all of the consequences of a guilty plea that it views as direct or indirect, but there can be no real dispute that one of the direct consequences of a guilty plea is the resulting sentence and that the Constitution therefore requires that a defendant be informed of the maximum sentence that could be imposed for the crime to which he is pleading guilty. The Supreme Court said as much in *Boykin*, and that has been the consistent view of the circuit courts both before and after *Boykin*. *See Boykin*, 395 U.S. at 244 n.7 ("'If these convictions [after a guilty plea] are to be insulated from attack, the trial court is best advised to conduct an on the record examination of the defendant which should include, inter alia, an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and *the permissible range of sentences*.'" (emphasis added) (quoting *Commonwealth ex rel. West v. Rundle*, 237 A.2d 196, 197-98 (Pa. 1968)); *Burton v. Terrell*,

576 F.3d 268, 271 (5th Cir. 2009) ("[T]he Due Process
[Clause] require[s] that a defendant be advised and understand
the consequences of a guilty plea. With respect to sentencing,
this means that the defendant must know the maximum prison
term and fine for the offense charged." (footnote and internal
quotation marks omitted)); *Trueblood v. Davis*, 301 F.3d 784,
786 (7th Cir. 2002) ("Due process as interpreted by the
Supreme Court requires that a defendant be advised of the
consequences of pleading guilty. Not necessarily *all* the con-
sequences, such as loss of the right to vote or of the right to
own a gun, or the effect on future sentences, but certainly the
maximum punishment that he faces if he is convicted in the
case at hand." (citations omitted)); *United States v. Salmon*,
944 F.2d 1106, 1130 (3d Cir. 1991) ("Due process requires
that a guilty plea be voluntary, that is, that a defendant be
advised of and understand the *direct* consequences of a plea.
The only consequences considered direct are the maximum
prison term and fine for the offense charged." (citation omit-
ted)); *see also Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259
(6th Cir. 1991); *Worthen v. Meachum*, 842 F.2d 1179, 1182
(10th Cir. 1988), *overruled on other grounds by Coleman v.
Thompson*, 501 U.S. 722 (1991); *Trujillo v. United States*,
377 F.2d 266, 269 (5th Cir. 1967); *Kotz v. United States*, 353
F.2d 312, 314 (8th Cir. 1965).

   That the maximum sentence is a direct consequence of a
guilty plea is important in this case because of the particular
way in which the West Virginia recidivist statute operates.
The statute does not authorize the imposition of a separate
sentence for one who is found to be a habitual offender, but
instead requires that the enhanced sentence be imposed *on the
underlying triggering felony. See State ex rel. Jorgenson v.
Boles*, 141 S.E.2d 139, 141-42 (W. Va. 1965) ("[N]o authority
existed to impose a separate sentence for the principal
offense. *The life sentence imposed under the recidivist statute
is given for the conviction of the principal offense.*" (emphasis
added)). Thus, the life sentence that Appleby received was the
sentence for the drunk-driving charges to which he pleaded

guilty. Appleby's guilty plea therefore was not knowingly and voluntarily made—he was informed before the plea was accepted that six years was the maximum sentence he could receive and was not informed that if the State elected to proceed under the recidivist statute, Appleby would be sentenced to life imprisonment with the possibility of parole.[1]

Given that federal law clearly establishes that the maximum sentence is a direct consequence of a guilty plea, the state court erred by applying the test circuit courts have developed to distinguish the collateral consequences of a guilty plea from the direct consequences of the plea. *See, e.g.*, *Cuthrell v. Director, Patuxent Inst.*, 475 F.2d 1364, 1366 (4th Cir. 1973) ("The distinction between 'direct' and 'collateral' consequences of a plea, while sometimes shaded in the relevant

---

[1] I should note that compliance with what I believe to be the requirements of Due Process—informing a defendant pleading guilty of the possibility of sentencing under the recidivist statute—ought not be as difficult as the State suggests it would be, notwithstanding the fact that the State might not always know at the time a guilty plea is entered whether the defendant qualifies for enhanced sentencing under the recidivist statute. In the federal system, the defendant's prior record generally is not known until the presentence report is prepared, after the defendant pleads guilty. When a defendant's prior record could have an effect on his sentence range, we nonetheless require the district judge before accepting a guilty plea to inform the defendant of the *possibility* of an enhanced sentence, *see, e.g.*, *United States v. Hairston*, 522 F.3d 336, 340 (4th Cir. 2008) ("[W]hile the district court at the time of the Rule 11 proceeding could not have been certain about whether Hairston would qualify as an armed career criminal, Rule 11 nonetheless required the court to anticipate the possibility and explain to Hairston the sentence that would be applicable if he had prior qualifying convictions."), and federal district courts have not found this requirement too burdensome. State courts in West Virginia should likewise be able to generally advise defendants of the possibility of recidivist sentencing without much difficulty. As to this case, I note that the possibility of a recidivist sentence was apparent from the indictment itself, which alleges at least five prior driving-under-the-influence convictions for Appleby in West Virginia. The state trial court thus should have known simply by looking at the indictment that Appleby was eligible for sentencing as a recidivist.

decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment."). While the *Cuthrell* standard provides a useful roadmap in cases where it is unclear whether a particular consequence is direct or collateral, it cannot be used to reclassify as collateral a consequence of a guilty plea that the Supreme Court has already characterized as direct. That is, even if West Virginia's recidivist proceedings fail every prong of the *Cuthrell* standard and therefore could be categorized as collateral under *Cuthrell*, it does not matter, because the Supreme Court has held that the maximum sentence is a direct consequence of a guilty plea. If the Supreme Court had not spoken on the issue, then it would be proper to apply the *Cuthrell* standard to resolve the question. But the Supreme Court has spoken, and it has said that the maximum sentence is a direct consequence of a guilty plea. This court simply cannot apply a test of its own making to reach the opposite conclusion.[2]

Appleby's sentence may have been the product of a layered and more complicated procedure than in the typical criminal case, but the material facts are that Appleby was sentenced to life *on the charges to which he pleaded guilty* after being told that he could be sentenced to no more than six years. Clearly established federal law requires that defendants be informed

---

[2]Moreover, even if it were proper to apply the *Cuthrell* standard, I do not believe that *Cuthrell* compels us to characterize West Virginia's recidivist proceedings as collateral. While a recidivist proceeding is perhaps technically separate from the underlying criminal case, the recidivist proceeding is, in function and effect, little more than a continuation of the original sentencing. And while the state prosecutor has discretion in deciding whether to seek a recidivist sentence in any given case, the resulting sentence is automatic once the prosecutor decides to proceed under the recidivist statute. See W. Va. Code § 61-11-18(c) ("When it is determined . . . that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person *shall be sentenced* to be confined in the state correctional facility for life." (emphasis added)).

of the maximum penalty to which their guilty plea exposes them, and I am aware of no basis for excepting from this rule recidivist sentences like the one at issue in this case.[3] Appleby's guilty plea therefore was not knowingly and voluntarily made, and the state court's decision rejecting his Due Process claims "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A § 2254(d)(1) (West 2006); *see Williams v. Taylor*, 529 U.S. 362, 405 (2000) (explaining that a state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite"); *Robinson v. Polk*, 438 F.3d 350, 355 (4th Cir. 2006) ("A state court adjudication is an unreasonable application of federal law when the state court . . . fails to apply the principle of a precedent in a context where such failure is unreasonable. . . ." (internal quotation marks omitted)).

## II.

Because I believe that the state court's opinion rejecting Appleby's Due Process claim was contrary to clearly established federal law, I respectfully dissent from the majority's refusal to grant Appleby's petition for a writ of habeas corpus.

---

[3]The Supreme Court rejected various constitutional challenges to West Virginia's recidivist statute in *Oyler v. Boles*, 368 U.S. 448 (1962), a pre-*Boykin* case. There was, however, no guilty-plea challenge in *Oyler*, and the Court was not called upon to consider what kind of information must be given to a defendant pleading guilty to a crime that makes him eligible for sentencing as a recidivist.